UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAREED SEPEHRY-FARD,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT STORES NATIONAL BANK, et al.,<br><br>    Defendants. | Case No. 13-cv-03131-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS; DENYING PLAINTIFF'S MOTIONS**<br><br>Re: Dkt. Nos. 80, 83, 84, 90, 92, 93 |

Currently before the Court are defendants' motions to dismiss plaintiff's Second Amended Complaint (Docket Nos. 80, 83) and plaintiff's motions for leave to amend, to compel, to challenge the Court's jurisdiction, and to reconsider plaintiff's demand that the Court facilitate a grand jury investigation. Docket Nos. 84, 90, 92, 93. These motions are current set for hearing on February 19, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument, and hereby VACATES the hearing. The Court recognizes its duty to construe the pleadings of pro se litigants liberally, but for the reasons discussed below, the Court GRANTS defendants' motions to dismiss WITH PREJUDICE and DENIES plaintiff's motions.

**BACKGROUND**

This case arises out of state court collection proceedings brought against plaintiff Fareed Sepehry-Fard, initiated by defendants Department Stores National Bank (DSNB) and Citibank ("Financial Entities"), and litigated by defendants Michael S. Hunt, Anthony Dipiero, and Donald Sherrill ("Attorney Defendants").[1] On October 4, 2013, the Court dismissed each of the claims asserted against the Financial Entities and Attorney Defendants because the claims: (1) were

---

[1] Defendant Larry Strowbridge is a process server, but also referred to as one of the Attorney Defendants.

1  barred by the *Rooker-Feldman* Doctrine, (2) were constitutional claims that could not be asserted
2  against these defendants, or (3) failed to allege facts sufficient to state a claim.  The Court gave
3  plaintiff leave to amend and provided specific advice on what plaintiff needed to do in order to
4  attempt to state valid claims against these defendants.  Docket No. 36.[2]

5       Plaintiff filed his First Amended Complaint, and defendants again moved to dismiss.  On
6  December 13, 2013, the Court granted the defendants' motions to dismiss and dismissed with
7  prejudice defendants Baca and Strowbridge, as well as some of the claims asserted against the
8  Financial Defendants and the Attorney Defendants.  Docket No. 74.  The Court granted plaintiff
9  leave to amend his TCPA and UCL claims against the Financial Entities, and leave to amend his
10 negligence, FDCPA, TCPA and UCL claims against the Attorney Defendants.  *Id*. at 22-23.
11 Plaintiff was again given very specific instructions on what was missing from his claims and what
12 he needed to allege in order to state claims against these defendants.

13      Plaintiff filed his Second Amended Complaint (SAC) on December 23, 2014.  The
14 Financial Entities and Attorney Defendants now move to dismiss the SAC.  Plaintiff has also filed
15 motions seeking various forms of relief.

16 **LEGAL STANDARD**

17      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
18 if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to
19 dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
20 face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible
21 when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the
22 defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
23 (citation omitted).  This standard is not akin to a probability requirement, but there must be "more
24 than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require
25 "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

---

[2] The Court also granted a motion to dismiss and dismissed with prejudice the claims plaintiff asserted against the Santa Clara Superior Court and Judges Mary Arand, Patricia M. Lucas and Mark H. Pierce.  A motion to reconsider that ruling was denied on November 6, 2013.  Docket No. 50.

1  relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

2  In deciding whether the plaintiff has stated a claim upon which relief can be granted, the
3  court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the
4  plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court
5  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
6  fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
7  2008).

8  Pro se complaints are held to "less stringent standards than formal pleadings drafted by
9  lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro
10 se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the
11 benefit of any doubt. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).
12 However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine
13 whether a claim has been stated. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268
14 (9th Cir. 1982).

## DISCUSSION

### I. FINANCIAL ENTITIES' MOTION TO DISMISS

As noted above, plaintiff was given leave to amend his TCPA and related UCL claims against the Financial Entities. With respect to the TCPA cause of action, in his SAC plaintiff alleges that the Financial Entities (he does not differentiate between DSNB and Citibank):

- initiated phone calls to plaintiff's residential line using an artificial or prerecorded voice, SAC ¶ 3;
- placed "14 such calls per week [intermittently] to Plaintiff's residential telephone number and cell phone number," *id.*;
- "continued to harass" plaintiff and made threatening calls to Plaintiff from approximately "early 2010 to late 2012" to plaintiff's residential and cellphone numbers, *id.*;
- placed calls that failed to automatically release plaintiff's line within five seconds after he hung up. *Id.*

Plaintiff continues to assert that calls were made to threaten, intimidate, and coerce plaintiff, but fails to provide any facts to substantiate his claim. For example, plaintiff does not identify the content of any call, whether prerecorded or not. He does not list specific calls that

occurred on specific dates to either his cell or residential line.  Similarly, plaintiff does not explain why he believes these calls were made by the Financial Entities, except for one sentence where he alleges that "financial entity Defendants identified themselves as the calling party."  SAC ¶ 3 at pg. 4.  He does not identify when those particular calls (where one or both of the Financial Entities identified themselves) were made, whether the calls were to his cell phone or his home number,[3] what was said during those specific calls, and most critically, whether those specific calls were placed using a prerecorded voice in alleged violation of the TCPA.

Most problematic, under the heading describing the TCPA allegations against the Financial Entities, plaintiff alleges that "attorney Defendants were also responsible to make calls to Plaintiff to harass, coerce, intimidate and threaten Plaintiff. Plaintiff knows this since attorney Defendants identified themselves as such during their unlawful harassing calls to Plaintiff."  SAC ¶ 4 at pg. 4. ¶ 5.  As above, plaintiff does not identify when the particular calls (where the Attorney Defendants identified themselves) were made, what was said during those calls, and whether those specific calls were placed using a prerecorded voice.

In the Court's prior orders, the Court gave plaintiff clear directions regarding: (1) the need to allege specific types of facts to support his TCPA claim against the Financial Entities; and (2) the need to separate out the TCPA claims asserted against the Financial Entities with respect to identifiable calls, from the TCPA claims asserted against the Attorney Defendants.  Despite those directions, plaintiff has still not alleged sufficient facts.

There are no facts alleged showing *why* plaintiff believes the Financial Entities were responsible for specifically identified calls that used prerecorded voices in violation of the TCPA. Instead, he again collapses his allegations and appears to reallege his Fair Debt Collection Practice Act (FDCPA) claims regarding harassing calls, when those claims were dismissed as to the Financial Entities with prejudice in the Court's prior Order.  Similarly, instead of identifying when the prerecorded voice calls he believes (based on their content) were placed by the Financial

---

[3] As noted in the Court's prior Order, as a debt collector, the Financial Entities cannot be sued under the TCPA for calls made to plaintiff's residence.  December 13, 2013 Order [Docket No. 74] at page 5, fn 4.

4

Entities were made, he simply lumps the allegations regarding prerecorded voice calls together with the "harassing" calls and says – without differentiating between the Financial Entities and the Attorney Defendants – that these "calls" were placed 14 times per week "intermittently" between early 2010 and late 2012.

Plaintiff has had three opportunities to attempt to allege his TCPA claim against the Financial Entities and has failed to do so. The Court, therefore, DISMISSES the TCPA claim WITH PREJUDICE. As the Court has dismissed all substantive claims asserted against the Financial Entities, and plaintiff's UCL claim is premised only on claims that the Court has dismissed with prejudice, the UCL cause of action asserted against the Financial Entities is also be DISMISSED WITH PREJUDICE.

## II. ATTORNEY DEFENDANTS' MOTION TO DISMISS

### A. Negligence

In his SAC, plaintiff alleges the following in support of his negligence claim:

- the Attorney Defendants had a duty with regard to enforcement of monetary obligations, particularly with respect to the Attorney Defendant's issuance of writs of execution on plaintiff's bank account in their attempt to collect on the state court debt;
- the Attorney Defendants overrode plaintiff's claim of exemption, which was filed with Sheriff Baca;
- the Attorney Defendants failed to correct their violation of plaintiff's rights when they were informed that plaintiff's account was exempt from levy because it contained less than $1000;
- the Attorney Defendants failed to remove the "unlawful levy" from plaintiff's bank account.

SAC ¶¶ 10-16.

As an initial matter, plaintiff cannot argue that the filing of the writ of execution was illegal, because the writ of execution served on plaintiff's bank account sought only to collect the amount of the state court judgment. As the Court has repeatedly noted in its prior Orders, the *Rooker-Feldman* doctrine prevents plaintiff from challenging the validity of the state court's judgment in this forum. Moreover, as plaintiff's own documents show, because claims of exemption are served on the levying agent – the Sheriff – any harm from the failure to honor an

5

exemption is caused by the levying agent and not the party who filed the writ of execution.[4] Plaintiff cites no authority to establish that the filer of a writ of execution is liable when the levying agent fails to honor a claim of exemption. In his Opposition, plaintiff argues that the Attorney Defendants are "conspirators" and worked in conjunction with Baca to ignore the claim of exemption. *See, e.g.*, Oppo. Br. at 3. However, Baca has been dismissed from this case. Moreover, plaintiff cannot simply assert that the Attorney Defendants were conspirators with Baca. As the Court has repeatedly instructed plaintiff, he must state facts to support this claim and there are no facts from which the Court can plausibly infer that the Attorney Defendants conspired with Sheriff Baca to either levy the account before the appropriate time or wrongfully ignored the claimed exemption.

Finally, plaintiff's current theory of why the levy was illegal is because he had under $1000 in his account. SAC ¶ 13. However, the party filing a writ of execution doesn't know how much money a debtor has in an account; only the debtor and the financial institution knows that. And even if a debtor tells a creditor how much money he has in an account – which plaintiff claims he did here, albeit after the writ was served – there is no authority to support plaintiff's argument that the Attorney Defendants should have taken plaintiff's word for it and withdrew the writ of execution. Relatedly, plaintiff cites no authority for his theory that the Attorney Defendants should be held liable for the error of the Sheriff in failing to honor the claim of exemption (assuming for the sake of argument, that the Sheriff made an error).[5]

Having had multiple opportunities to attempt to state a negligence claim against the Attorney Defendants, and having failed to do so, the negligence claim is DISMISSED WITH

---

[4] Plaintiff consistently refers to a levy of his "bank account." However, plaintiff attaches copies of two writs of execution to his SAC, one served on Bank of America (Docket No. 79, pgs. 19-20) and one served on JP Morgan Chase. Docket No. 79 pgs, 30-31.

[5] As with many of the claims asserted during this case, plaintiff's theory of why his bank account was exempt from levy and why the levy itself was illegal have constantly changed. In the claim of exemption documents served on the Sheriff in response to the writs of execution, plaintiff argued that his bank account was exempt because the underlying judgment was fraudulently obtained and void. Docket No. 79 at pg. 14. In opposing the prior motions to dismiss, plaintiff argued the levy was illegal because Sheriff Baca and/or the Attorney Defendants failed to wait a required amount of time before levying the account. Docket No. 74 at pgs. 3-4, 19. Here, plaintiff argues that his bank account was exempt from levy because it contained less than $1000. SAC ¶ 13.

PREJUDICE.

### B. TCPA

In support of his TCPA claim, plaintiff alleges that:

- the Attorney Defendants made repeated calls to plaintiff to harass, coerce, intimidate and threaten him;
- like the Financial Entities, the Attorney Defendants made repeated calls to him in the middle of the night;
- all of the TCPA violations by the Financial Entities were "also done by the attorney Defendants" and their agents with similar frequency, content, duration, and pattern to both plaintiff's home and cellular numbers.

SAC ¶¶ 18-23.

Plaintiff's TCPA claim against the Attorney Defendants suffers from the same fatal defects as his TCPA claim against the Financial Entities: plaintiff fails to identify when the Attorney Defendants made particular calls, what was said during those calls to indicate the Attorney Defendants are responsible, and whether those specific calls were placed using a prerecorded voice. Plaintiff continues to impermissibly collapse his non-specific allegations against the Financial Entities with his non-specific allegations against the Attorney Defendants. Plaintiff also continues to collapse his TCPA allegations – which can only be based on calls placed to his cellular line using a prerecorded voice – with his FDCPA "harassing" phone call claims.

Plaintiff has had three opportunities to attempt to allege his TCPA claim against the Attorney Defendants and has failed to do so. The Court, therefore, DISMISSES the TCPA claim WITH PREJUDICE.

### C. FDCPA

In support of his FDCPA claim, plaintiff asserts that the Attorney Defendants:

- placed an unlawful levy on his bank account, and that the levy was unlawful because plaintiff was entitled to a claim of exemption;
- caused his phone to ring and engaged plaintiff in telephone conversations repeatedly and continuously with intent to annoy, abuse or harass, despite plaintiff telling the Attorney Defendants not to do so.

SAC ¶¶ 29-30. Plaintiff also alleges that the Attorney Defendants, like the Financial Entities, called him in the middle of the night to harass him. *Id*. ¶ 19.

As to the levy, as noted above plaintiff has no authority that it was illegal under California

law or otherwise a violation of the FDCPA for the Attorney Defendants to *serve* a writ of execution on a financial institution when plaintiff *subsequently* filed a claim of exemption, asserting that the account had less than $1000 in it. Nor does plaintiff have authority that the Attorney Defendants should not have accepted money under the levy (if that occurred) if the money was released only because the levying officer failed to honor plaintiff's claim of exemption. Finally, as noted above, plaintiff cannot challenge the Attorney Defendants' right to serve a writ of execution based on the state court judgment.[6]

As to the harassing phone calls, plaintiff still fails to state facts supporting his FDCPA claim. As discussed with respect to his TCPA claims, plaintiff collapses his allegations and fails to differentiate between calls he alleges violated the TCPA (using an autodialer or prerecorded voice) and calls that he alleged violated the FDCPA (because they were harassing, etc.). He does not specify which harassing calls were made by the Attorney Defendants, as opposed to the Financial Entities. As to why the calls were harassing, at most plaintiff alleges that the frequency of some calls (14 per week "intermittently" during an unspecified period of time) and that a few calls were made "in the middle of night." However, plaintiff provides no substantiating facts about those calls. For example, plaintiff does not identify the specific weeks between 2010 and 2012 when he received 14 calls a week and no facts that would allow the Court to infer that the calls were made by the Attorney Defendants. Similarly, plaintiff does not identify when he received the middle of the night calls, when the middle of the night calls were made, or what was disclosed in the middle of the night calls to support an inference that they were made by the Attorney Defendants.

As with his TCPA claim, plaintiff has repeatedly been given specific directions on what he needed to do to plead a FDCPA claim and he has failed to do so. Plaintiff's FDCPA claim is

---

[6] Courts have held that FDCPA claims based on allegations that creditors impermissibly garnished money in order to execute on a state court judgment are barred by the *Rooker-Feldman* doctrine. *See, e.g., Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1239 (C.D. Cal. 2012); *Bryant v. Gordon & Wong Law Group, P.C.,* 681 F. Supp. 2d 1205, 1208 (E.D. Cal. 2010) ("However in disputing the garnishment of his accounts, Plaintiff is inherently challenging the entry of default against him and the writ of execution that authorized the garnishment. The net effect is that Plaintiff is seeking to undermine the state court judgments.").

DISMISSED WITH PREJUDICE.

### D. UCL

Plaintiff's UCL claim against the Attorney Defendants is based on his allegations that the Attorney Defendants have a pattern and practice of violating the TCPA, the FDCPA in harassing plaintiff and others to collect debts, and that they engaged in fraud when they refused to remove the unlawful levy from plaintiff's bank account. SAC ¶¶ 31-35. As plaintiff's UCL claim is premised on the same conduct that he relied on to support his now dismissed negligence, TCPA, FDCPA claims, the UCL cause of action asserted against the Financial Entities is also DISMISSED WITH PREJUDICE.

### III. PLAINTIFF'S MOTIONS

Four motions filed by plaintiff are pending on the docket. Three of them are dated November 6, 2013, and appear to be identical (or substantially similar) to motions plaintiff filed in November 2013 and the Court rejected in its December 13, 2013 Order. *Compare* Docket Nos. 64, 66 & 67 *with* Docket Nos. 90, 92 & 93. There are no reasons why the Court should reconsider its prior denials of those motions. Therefore, the motions at Docket. Nos. 90, 92 and 93 are DENIED.

Docket No. 84 is a motion to reconsider the Court's January 7, 2014 Order denying plaintiff's motion asking the Court to facilitate a grand jury investigation into the defendants' criminal activities so that plaintiff can avail himself of his "legal right to prosecute all Defendants." Docket No. 84 at 4:22-23. There is no basis to reconsider the Court's prior ruling. As an initial matter, plaintiff has failed to establish that he has a "legal right" to prosecute defendants for alleged crimes. *See, e.g., Baranoski v. United States Attorney's Office*, 215 Fed. Appx. 155, 2007 U.S. App. LEXIS 2454, *3 (3d Cir. N.J. 2007) (concluding plaintiff "does not have a constitutional, statutory or common law right to independently communicate with a federal grand jury. The commencement of a federal criminal case by submission of evidence to a grand jury is 'an executive function within the exclusive prerogative of the Attorney General.'"). While plaintiff cites authorities discussing the function of the grand jury in general, including the limited supervisory role judges have over grand juries, plaintiff presents no authority to support his

1  request that this Court take the extraordinary step of "facilitating" a grand jury investigation into

2  defendants' alleged criminal conduct, when that authority is normally exercised in this District by

3  the United States Attorney's Office for the Northern District of California.  *Id.,* 2007 U.S. App.

4  LEXIS 2454, *4-5 (the District Court properly denied "extraordinary" request for mandamus relief

5  because plaintiff did not establish he had a "clear and indisputable" right to compel the U.S.

6  Attorney to empanel a federal grand jury).  Plaintiff's motion for reconsideration is DENIED.

## CONCLUSION

For the foregoing reasons, plaintiff's motions are DENIED.  Defendants' motions are GRANTED.  The Second Amended Complaint is DISMISSED WITH PREJUDICE and judgment will be entered in defendants' favor.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: February 14, 2014



WILLIAM H. ORRICK
United States District Judge